# In the United States Court of Federal Claims

No. 12-507L

(Filed:  October 19, 2016)

*************************************
)
ARTHUR P. BAILEY, JR. AND CATHY )
BAILEY; MAVIS A. GOLDMAN; AND )
JASMINE J. ROBERSON; )
)
For Themselves and As Representatives of )
a Class of Similarly Situated Persons, )
)
Plaintiffs, )
)
v. )
)
UNITED STATES, )
)
Defendant. )
)
*************************************
)

Rails-to-trails takings case; class action;
settlement; fairness hearing

J. Robert Sears, Baker Sterchi Cowden & Rice, LLC, St. Louis, Missouri, for plaintiffs. With him on the briefs were Steven M. Wald and Michael J. Smith, Stewart Wald & McCulley LLC, St. Louis, Missouri.

Jason A. Hill, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs was John C. Cruden, Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

This rails-to-trails class action comes before the court upon the parties' settlement of the class members' claims and after notice to the class and a fairness hearing regarding the settlement.  The class of plaintiffs consists of thirty-six claimants who allege that the federal government took their property without providing just compensation.  Am. Compl. ¶¶ 3-17, ECF No. 13; Joint Status Report (Sept. 4, 2013) ¶ 2, ECF No. 15.  The class members' properties were subject to an easement for rail purposes held by the Mississippi and Skuna Valley Railroad, LLC ("the Skuna Valley Railroad"), which applied to the Surface Transportation Board ("STB") for an abandonment of rail use.  *Mississippi & Skuna Valley R.R., LLC – Abandonment Exemption – in Yalobusha & Calhoun Cntys., Miss.,* Docket No. AB 1089X, 2011 WL 5325144 (S.T.B. Nov. 7, 2011).  The STB issued a Notice of Interim Trail Use ("NITU") in 2012,

pursuant to Section 208 of the National Trails System Act Amendments of 1983, Pub. L. No. 98-11, § 208, 97 Stat. 42, 48 (codified at 16 U.S.C. § 1247(d)), authorizing a recreational trail on the portions of plaintiffs' properties previously encumbered by the railroad-purposes easements. Am. Compl. ¶¶ 3-4, 12-17; Joint Compromise Settlement Agreement Between Pls. and United States ("Settlement Agreement") at 1, ECF No. 52-2. Plaintiffs, Arthur P. Bailey, Jr., Cathy Bailey, Mavis A. Goldman, and Jasmine J. Roberson, filed suit in this court as representatives of a class of landowners alleging a taking of their property by the federal government without just compensation, in contravention of the Fifth Amendment. *See generally* Am. Compl. Plaintiffs requested certification of the class, Am. Compl. ¶¶ 19-24, which the court granted on January 23, 2013. ECF No. 11.

After engaging in settlement negotiations, plaintiffs and the government jointly submitted a settlement agreement on June 6, 2016. *See* Joint Mot. for Preliminary Approval of Settlement, Approval of Notice to Class Members Regarding Proposed Class Action Settlement, and Request to Set Date for Public Hearing under RCFC 23(e) ("Joint Mot."), ECF No. 52. The agreement provides the amount of just compensation for the class members, plus interest from the date of the taking. Settlement Agreement at 3. Additionally, the parties agreed to the amount of statutory attorneys' fees and litigation costs for class counsel, pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act ("Uniform Relocation Act"), 42 U.S.C. § 4654(c). *Id.*[1] The court preliminarily approved the settlement for the purpose of providing class members with notice of, and an opportunity to comment on, the agreement. Order of June 29, 2016, ECF No. 53. After being served with notice of the settlement, no class member objected to the terms of the agreement. *See* Pl.'s Notice of Class Members' Responses to Class Action Settlement Notice ("Class Members' Response"), ECF No. 55. A hearing on the fairness of the settlement agreement was held on September 26, 2016.

## BACKGROUND

### A. The Takings Claims

This class action relates to a 21-mile rail line, formerly operated by the Skuna Valley Railroad, extending from milepost 0.0 to milepost 21.0 in Yalobusha and Calhoun Counties, Mississippi. Am. Compl. ¶ 3; Settlement Agreement ¶ 1. Plaintiffs allege that the railroad formerly owned an easement for the purpose of the rail line and that such easement lay across plaintiffs' properties. Am. Compl. ¶¶ 3-4.

---

[1]42 U.S.C. § 4654(c) states:

> The court rendering a judgment for the plaintiff in a proceeding brought under section 1346(a)(2) or 1491 of Title 28, awarding compensation for the taking of property by a [f]ederal agency, or the Attorney General effecting a settlement of any such proceeding, shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will in the opinion of the court or the Attorney General reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding.

On January 20, 2012, the STB issued a NITU that authorized a recreational trail along the abandoned rail line.  Settlement Agreement at 1.  In accord with the NITU, the railroad transferred its interest in the rail line to the Mississippi & Skuna Valley Rails-to-Trails Recreation District, resulting in an easement for the latter to use the abandoned rail line for trail development.  *Id.* at 1-2.  Plaintiffs allege that, but for the STB decision, they "would have the exclusive right to physical ownership, possession and use of their property free of any easement for recreational trail use or future railroad use."  Am. Compl. ¶ 13.  Thus, plaintiffs filed suit in this court on the ground that the NITU resulted in a taking of plaintiffs' property by the government without just compensation.  Am. Compl. ¶ 14.  Plaintiffs requested a money judgment representing the fair market value of the property taken on the date the NITU was issued, as well as severance damages, delay damages, interest, and attorneys' fees and costs.  Am. Compl. at 4.

### B.  The Settlement Agreement

In aid of settlement discussions, the parties selected joint real estate appraisers to independently provide a reckoning of the fair market value of the property allegedly taken.  Hr'g Tr. 5:19 to 6:20 (Sept. 26, 2016).[2]  The joint appraisers visited the land at issue in March 2014 and appraised selected representative parcels, as agreed by both parties.  Joint Mot. at 2.  Counsel for the class and for the government separately reviewed the appraisals and had the opportunity to ask questions.  *Id.*  Class members were also notified of the appraisal process and given an opportunity to communicate with the joint appraisers.  Hr'g Tr. 6:21 to 7:3.  The final values of the representative appraised parcels were then extrapolated to the non-appraised parcels.  Hr'g Tr. 6:1-9.  The appraisal and negotiation process did not favor any individual class member over any other member.  Joint Mot. at 3.

Subsequently, the parties came to a resolution of plaintiffs' claims and agreed to a proposed settlement that provides for the payment of principal, interest, and statutory attorneys' fees and costs.  Joint Mot. at 2-5.  The agreement results in a total settlement award of $622,374.12, which includes $324,928.65 in principal for the value of the land allegedly taken, $57,445.47 in interest calculated at an annual rate of 3.55%,[3] and $240,000 in statutory attorneys' fees and costs to be paid and reimbursed to class counsel under the Uniform Relocation Act.  Settlement Agreement ¶ 5.  The agreed amount of principal and interest is not divided evenly among the class members, but rather is allocated based on each class member's individual property valuation.  *Id.* at 6-7 (Attachment A).

Additionally, the settlement agreement states that one class member's claim is dismissed without compensation.  Settlement Agreement ¶ 4.  That owner's property touches the rail corridor only at a point and does not extend into the corridor itself.  Hr'g Tr. 8:3-9:2.

---

[2]The date will be omitted from further citations to the transcript of the fairness hearing.

[3]$57,445.47 represented the interest accrued as of September 20, 2016.  Under the terms of the agreement, interest continues to accrue at an annual interest rate of 3.55% until the date of payment.  Settlement Agreement ¶¶ 5, 7.

*C. Notice of Settlement to Class Members*

After an authorized representative of the United States Attorney General approved the terms of the parties' tentative settlement agreement, *see* Joint Status Report (May 9, 2016), ECF No. 51, the parties filed a joint motion seeking preliminary court approval of the settlement agreement and the proposed notice to be provided to class members. Joint Mot. The court preliminarily approved the agreement and notice for the purpose of allowing the class members to receive notice of the proposed settlement. Order of June 29, 2016, ECF No. 53. In response to the court-approved notice, *see* Notice of Proposed Final Settlement of Class Action against the United States ("Notice of Settlement"), ECF No. 52-1, twenty-six of the thirty-six claimants affirmatively approved the agreement, and no claimants objected. *See* Class Members' Response; Hr'g Tr. 13:20-25.[4]  One class member expressed a desire to appear at the fairness hearing, but then subsequently decided not to attend. *See* Class Members' Response; Hr'g Tr. 3:23-4:19. The fairness hearing was held on September 26, 2016. Both plaintiffs' class counsel and government counsel supported approval of the settlement agreement. Hr'g Tr. 11:21-25, 14:22-23.

**ANALYSIS**

The court is obliged to evaluate the fairness of the settlement agreement pursuant to Rules 23(e) and (h) of the Rules of the Court of Federal Claims ("RCFC").

*A. Approval of the Settlement Agreement*

Under RCFC 23(e), the court must provide its approval before "a certified class may be settled, voluntarily dismissed, or compromised." The rule specifies:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) [Not used.]

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

---

[4]The class consisted of thirty-six claimants. Initially, twenty-five claimants responded to the Notice of Settlement and indicated their approval, and at the fairness hearing class counsel reported that he had received one additional response signifying approval. Hr'g Tr. 13:20-25.

RCFC 23(e)(1)-(5) (alteration in original).[5]

Here, the notice and hearing requirements have been met.  The issue for the court is whether the settlement agreement is "fair, reasonable, and adequate" under RCFC 23(e)(2).  In addressing this issue, the court must look to the procedural and substantive fairness of the agreement.  *See Christensen v. United States*, 65 Fed. Cl. 625, 629 (2005) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *Weinberger v. Kendrick*, 698 F.2d 61, 73-74 (2d Cir. 1982) (Friendly, J.)).  Procedural fairness depends on whether the parties engaged in "arms-length negotiations" in reaching an agreement, and whether plaintiffs' class counsel conducted the necessary discovery to effectively represent the interests of the class.  *Id.* (citations and internal quotations omitted).  Substantive fairness, which is the court's primary concern, relates to the terms of the settlement agreement.  *Id.*  The court evaluates the terms of the agreement in conjunction with the likely risks and rewards of litigation.  *See Geneva Rock Prods., Inc. v. United States*, 119 Fed. Cl. 581, 589 (2015) (citing *Weinberger*, 698 F.2d at 73-74; *Christensen*, 65 Fed. Cl. at 629), *appeal filed*, No. 15-5078 (Fed. Cir.).  There is no definitive list of factors that the court must apply in determining the substantive fairness of a settlement agreement, but many courts have considered the following factors:

> (1) The relative strengths of plaintiffs' case in comparison to the proposed settlement, which necessarily takes into account:
>
>> (a) [t]he complexity, expense and likely duration of the litigation;
>>
>> (b) the risks of establishing liability;
>>
>> (c) the risks of establishing damages;
>>
>> (d) the risks of maintaining the class action through trial;
>>
>> (e) the reasonableness of the settlement fund in light of the best possible recovery;
>>
>> (f) the reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation;
>>
>> (g) the stage of the proceedings and the amount of discovery completed; [and]
>>
>> (h) the risks of maintaining the class action through trial;

---

[5]Though there are differences between RCFC 23 and Fed. R. Civ. P. 23, the two rules are substantially similar; federal court decisions applying Fed. R. Civ. P. 23 are typically persuasive in this court.  *See Barnes v. United States*, 68 Fed. Cl. 492, 494 n.1 (2005).  The most significant difference between the two rules is that this court's rule "contemplates only opt-in class certifications, not opt-out classes."  RCFC 23 Rules Committee Notes (2002 Revision).

    (2) The recommendation of the counsel for the class regarding the
        proposed settlement, taking into account the adequacy of class
        counsels' representation of the class;

    (3) The reaction of the class members to the proposed settlement,
        taking into account the adequacy of notice to the class
        members of the settlement terms;

    (4) The fairness of the settlement to the entire class; [and]

    (5) The fairness of the provision for attorney fees . . . .

*Dauphin Island Prop. Owners Ass'n v. United States*, 90 Fed. Cl. 95, 102-03 (2009) (citing cases). In evaluating these factors, the court must consider "the interest in encouraging settlements, particularly in class actions, which are often complex, drawn out proceedings demanding a large share of finite judicial resources." *Christensen*, 65 Fed. Cl. at 629 (citations omitted).

Here, there is no evidence or indication that the settlement agreement was procedurally unfair. The parties agreed to a joint appraiser, provided the joint appraiser with necessary information, and had the opportunity to raise questions and separately review the appraisal reports. Joint Mot. at 2. The parties represented that the joint appraiser addressed all questions and concerns in a satisfactory manner. *Id.* As a result, the parties reached a settlement agreement through an arms-length negotiation. *Id.* at 2-3; *see* Settlement Agreement. Further, the parties kept the court informed of their progress by filing seventeen joint status reports between September 4, 2013 and May 9, 2016. *See* ECF Nos. 15, 20, 26, 28, 32-33, 35-38, 40, 43, 47-51. The parties demonstrated a continuous and consistent effort in "resolving this case without the need for further litigation," indicating that the parties conducted settlement negotiations diligently and without collusion. *See, e.g.*, Joint Status Report (Feb. 19, 2014), ECF No. 26. The court also finds that class counsel acted as a zealous and effective advocate for the class members. Class counsel kept class members informed, promptly identified a joint appraiser, engaged in a thorough appraisal process, performed site visits, and participated in settlement discussions with the government continuously and in good faith. *See, e.g.*, Joint Status Report (Sept. 4, 2013), ECF No. 15; Joint Status Report (Oct. 31, 2013), ECF No. 20; Joint Status Report (Feb. 19, 2014), ECF No. 26; Joint Status Report (April 7, 2014), ECF No. 28; Joint Mot. at 2-3; Notice of Settlement.

The court also finds the substantive terms of the proposed settlement agreement to be fair, reasonable, and adequate. In making this determination, the court first considers whether the terms of the agreement reflect the likely rewards of litigation. *See Christensen*, 65 Fed. Cl. at 629 (quoting *Weinberger*, 698 F.2d at 73 (in turn quoting *Protective Committee for Indep. Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 424-25)). As discussed *supra*, the parties jointly conducted a detailed appraisal process that both parties found satisfactory. Both parties approved the final settlement agreement and class counsel endorsed the agreement as fair, reasonable, and adequate for the class members. *See* Joint Mot. at 2-3; Hr'g Tr. 11:21-25, 14:22-23; *see also Raulerson v. United States*, 108 Fed. Cl. 675, 678 (2013) ("[T]he professional judgment of plaintiff's counsel is entitled to considerable weight in the court's determination of

the overall adequacy of the settlement.") (citations and internal quotations omitted).  The tangible settlement also provides the class members with a faster and more certain benefit than trial would because it avoids the time, complexities, risks, and costs associated with a trial.  *See Sabo v. United States*, 102 Fed. Cl. 619, 628 (2011).

Additionally, the court must assess the adequacy of the notice given to class members regarding the terms of the settlement agreement and evaluate the class members' responses to that notice.  *Dauphin Island,* 90 Fed. Cl. at 103.  Here, the notice of the proposed agreement provided a comprehensive and detailed explanation of the suit and settlement terms.  *See generally* Notice of Settlement.  Specifically, the notice outlined the events giving rise to the suit, the appraisal process utilized in valuing each class member's property, the total settlement amount, the amount of money apportioned to the individual class members receiving the notice, and the agreed amount of statutory attorneys' fees and costs.  *Id.* at 1-2, 5.  Further, the notice explained the class members' legal rights and options, and gave class members an opportunity to provide comments, attend the fairness hearing, and speak at the hearing.  *Id.* at 3-4, 6-7.  The court reviewed and approved the proposed notice before class counsel mailed it to the class members.  Order of June 29, 2016, ECF No. 53.  Twenty-six of the thirty-six class members responded to the notice of settlement and no class member objected.  *See* Class Members' Response; Hr'g Tr. 13:20-25.  Two of the class members provided comments, but only to express their support for the settlement.  *See* Class Members' Response.  Class support for the settlement "weighs . . . in favor of approval."  *Christensen*, 65 Fed. Cl. at 630.

Further, the court must assess whether the settlement agreement is fair to the class as a whole.  An agreement will be fair when it is "uniformly available" to the entire class while also "tailored to distinct groups within the class."  *Berkley v. United States*, 59 Fed. Cl. 675, 711 (2004).  Here, a joint appraiser independently evaluated the representative parcels affected and had access to the class members.  Joint Mot. at 2.  The joint appraiser grouped the non-appraised parcels with similar representative parcels that were appraised.  *Id.*  The parties then jointly agreed to extrapolate the values of the appraised parcels to similar non-appraised parcels.  *Id.* After review of the final reports and extrapolations, the parties agreed to a settlement that provided relief to thirty-five of the thirty-six class members, based upon the value of each member's property.  *Id.* at 2-3.[6]  Class counsel represented that the negotiations did not favor any individual class member over any other member.  *Id.* at 3.  Because the parties jointly agreed to a detailed process that resulted in a fair value to be paid to each individual class member, the court finds that this factor has been satisfied.

The court also finds that the $240,000 in statutory attorneys' fees and costs provided in the settlement agreement is a fair amount.  The amount represents attorneys' fees and "reasonable costs and expenses that were incurred out-of-pocket by [c]lass [c]ounsel in this litigation."  Joint Mot. at 5.  Class counsel represented that the amount reflects more than 833 hours of work on the case through October 9, 2015, plus additional time spent on reaching a final

---

[6]One class member, Annie Steen, did not receive relief because the parties discovered that the claimant's property only met the rail corridor at a point, but did not extend into the corridor.  Hr'g Tr. 8:6-14.  Class counsel notified the claimant of this circumstance in September 2015 and provided her with an opportunity to respond, but the claimant did not do so.  Hr'g Tr. 8:14-22.  Accordingly, the parties agreed that her claim should be dismissed.  Settlement Agreement ¶ 4.

settlement agreement.  Hr'g Tr. 17:5-13.  An authorized representative of the United States Attorney General approved the amount.  Joint Mot. at 2; *see also* Hr'g Tr. 16:8-15.  Additionally, the class members did not raise any objections or concerns after receiving notice of the amount. *See* Notice of Settlement at 1; Class Members' Response.

### B.  Approval of Attorneys' Fees and Costs

Under RCFC 23(h), the court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Here, as discussed *supra*, the court finds the proposed attorneys' fees and costs to be reasonable and fair.  Thus, the court approves the proposed $240,000 in statutory attorneys' fees and costs.

### CONCLUSION

For the reasons stated, approval of the parties' proposed settlement agreement is GRANTED.  The total settlement award is $622,374.12, consisting of $324,928.65 in principal for the value of the land allegedly taken, $57,445.47 in interest calculated through September 20, 2016, $240,000 in statutory attorneys' fees and costs to be reimbursed to class counsel under the Uniform Relocation Act, and interest at the rate of 3.55% on $324,928.65 from September 21, 2016, compounded annually, until the judgment is paid.

Class counsel shall receive the settlement award, disburse payments as set forth in the settlement agreement, and file a notice of compliance with the court after all payments are completed.  To account for the delay in payment after September 20, 2016, the total interest paid by the government shall increase under the same interest computational method as described in the settlement agreement, at an annual interest rate of 3.55% compounded annually, until the date that judgment is paid.

The claim of Annie Steen is dismissed, as the parties have agreed.

The clerk will enter judgment in accord with this disposition.  Costs are encompassed in the settlement agreement.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge